**In re Anonymous No. 84 D.B. 87**

Disciplinary Board Docket, no. 84 D.B. 87.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

ECKELL, *Member,* May 10, 1989—Pursuant to rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On October 27, 1987, a petition for discipline was filed against respondent. The petition alleged two charges of professional misconduct and charged that in both instances respondent violated two disciplinary rules of the Code of Professional Responsibility:

(a) Disciplinary Rule 6-101(A)(3) — dealing with neglect of a legal matter; and

(b) Disciplinary Rule 7-101(A)(2) - dealing with intentional failure to carry out a contract of employment with a client for professional services.

Respondent was personally served with the petition for discipline on November 4, 1987, but he failed to file an answer within the prescribed time. The matter was referred to Hearing Committee [    ], consisting of [    ].

A hearing was conducted on May 16, 1988. Respondent appeared with counsel and testified on his own behalf as to both charges. Respondent presented no other witnesses or exhibits. Petitioner offered evidence through the testimony of their witnesses and four exhibits, including stipulations previously executed by and between petitioner and respondent.

On September 14, 1988, the hearing committee was reconvened when additional information became available which was pertinent under Disciplinary Board Rule 89.151 for the hearing committee to consider in making its determination of discipline. This information related to the final disposition of three prior charges brought against respondent. By order of the Supreme Court of Pennsylvania dated July 15, 1988, respondent received a three-month suspension for violations relating to these three prior charges.

The hearing committee filed its report on January 31, 1989 and found that respondent had violated Disciplinary Rules 6-101(A)(3) and 7-101(A)(2). The hearing committee recommended that respondent be suspended from the practice of law for a one-month period.

Petitioner filed a brief on exceptions on February 16, 1989. The disciplinary board adjudicated the matter at its April 7, 1989 meeting.

## FINDINGS OF FACT

The disciplinary board substantially adopts the hearing committee's findings of fact which are supported by the evidence and stipulation entered into between the parties.

(1) Respondent is an attorney at law who was born in 1949 and was admitted to practice law in the Commonwealth of Pennsylvania in 1980. His professional office is located at [    ].

(2) Prior to attending law school, respondent served in the Marine Corps and saw action in Vietnam.

(3) Respondent attended [    ] University School of Law and upon respondent's graduation from law school in 1968, he worked for the [    ] administration until November 1981.

(4) Respondent is a sole general practitioner.

(5) During the period of August 20 through December 1986, respondent was hospitalized on two occasions as an inpatient at [    ] Hospital in [    ], Pa. for various health problems, including angina and alcoholism.

### Charge 1

(6) On July 18, 1986, a criminal complaint was filed by the [B] Police which alleged that [C] had operated his vehicle in [B] while he was "under the influence of an intoxicating liquor to the degree that rendered him incapable of safe driving."

(7) On August 11, 1986, [C] retained respondent to represent him in regard to the above action. On that date, [C] paid respondent $100 in cash.

(8) On or about September 8, 1986, [C] received notice of suspension of his license from the Pennsylvania Department of Transportation for his re-

fusal to take a breathalyzer test at the time he was stopped. The suspension was to become effective October 7, 1986.

(9) On September 10, 1986, respondent participated in a preliminary hearing held before a district magistrate, at which time it was determined that both the driving under the influence charge and a charge involving a traffic-control device would be bound over for court.

(10) At the preliminary hearing, [C] paid respondent an additional sum of money in cash, for which respondent did not provide him with a receipt. The amount of this sum is in question.

(11) On September 19, 1986, respondent filed a praecipe for appearance with the clerk of courts, formally entering his appearance on behalf of [C].

(12) On September 12, 1986, an information was filed by the district attorney's office concerning the two charges.

(13) Respondent acknowledged receipt of this information on October 17, 1986.

(14) On or about October 2, 1986, respondent acknowledged receipt of a subpoena which had been issued for [C], requiring [C] to appear on October 17, 1986 in order to be formally arraigned on the charges.

(15) On October 7, 1986, respondent filed a statutory appeal of the license suspension on behalf of [C].

(16) On or about October 17, 1986 [C] was arraigned, at which time respondent signed an acknowledgment, indicating that he had read a notice to defendant regarding the time period within which he was able to commence discovery and file and serve pretrial motions.

(17) By order of court dated November 17, 1986, [C] was placed on ARD as to the DUI charge. The violation concerning the traffic-control signal was dismissed.

(18) On or about December 3, l986, notice was

sent to respondent's office by Judge [D's] secretary which indicated that hearing was set on the license suspension appeal for January 14, 1987.

(19) Sometime between middle and late December 1986, respondent informed [C] that the hearing had been set for January 14, 1987.

(20) Subsequently, [C] telephoned respondent's home and office on several occasions to request information concerning the status of his appeal of the license suspension.

(21) In fact, respondent did not request a continuance of the January 14 hearing on [C's] behalf.

(22) [C's] appeal was dismissed by court order dated January 14, 1987, as neither [C] nor respondent appeared for the hearing.

(23) Respondent made no attempt after the January 14 hearing date to determine the disposition of the case.

(24) A petition to reconsider the court's order was filed by [C's] new counsel on or about March 18, 1987. That petition was denied by the court on April 16, 1987.

## Charge 2

(25) On or about June 19, 1986, [E] telephoned respondent. During that conversation, [E] discussed his desire to retain counsel to look into possible wrongdoing by a law firm concerning its involvement with the estate of [F], his aunt.

(26) Specifically, [E] was concerned about possible undue influence by members of the firm who had apparently been in contact with [F] for several years prior to her death and who had personally inherited the large majority of [F's] substantial estate.

(27) Respondent agreed to represent [E] in this matter and told him that his fee would be in the vicinity of $2,500.

(28) At the time that respondent was retained, the

will of [F] had already been entered into probate and letters testamentary granted to one of the lawyers in question on August 26, 1985. The inheritance tax return had been filed in or about October 1985, which had been accepted as filed by the Department of Revenue on April 28, 1986.

(29) Subsequently, [E] forwarded to respondent a check for $250, as well as some information concerning the estate.

(30) Sometime between the middle and the end of July 1986, [E] forwarded to respondent's office a check which he had received in the amount of $1,000 from the law firm in question (which was also handling the estate) representing a legacy he was due under the will.

(31) On or about July 16, 1986, a supplemental inheritance tax return was filed on the estate.

(32) On July 22, 1986, a first and final account was filed on the estate.

(33) By letter dated September 2, 1986, [E] was informed by [G], Esq., that the estate was listed for audit on September 15, 1986 at 10:00 a.m.

(34) On September 15, 1986, an audit for the estate was held.

(35) By decree of September 24, 1986, the Orphans' Court ordered that the funds in the estate be distributed as per the schedule of distribution (according to which, [E] was to receive only a legacy of $1,000 from the estate).

(36) At some time, respondent directed his assistant to file a notice of appeal on behalf of [E] concerning the estate with the [ ] County Register of Wills Office.

(37) By letter dated December 30, 1986, the [ ] County Register of Wills Office notified respondent that the signature of [E] was required on the appeal before it could be filed, and that once the new form was completed, they would proceed with the filing.

(38) No new notice of appeal was filed by respondent on behalf of [E].

(39) [E] sent to respondent a certified letter dated June 10, 1987. This letter was received by respondent's office on June 19, 1987.

(40) The executor for the estate sent [E] a "replacement" cashier's check in the amount of $1,000 in early December 1986 due to the fact that the earlier check had never been cashed.

(41) The executor for the estate has never been personally contacted by respondent concerning his representation of [E].

(42) During the period in which these two charges were filed against respondent, final disposition was made regarding three previous charges filed against respondent.

(43) In an order of the Supreme Court of Pennsylvania dated July 15, 1988, respondent was suspended for a period of three months for violations of certain disciplinary rules as set forth in these three previous charges.

(44) The period of occurrence of these three previous charges was approximately from July 1985 through the end of 1986.

## DISCUSSIONS

The disciplinary board affirms the hearing committee's conclusion that respondent has committed violations of D.R. 6-101(A)(3) and D.R. 7-101(A)(2). However, the disciplinary board does not adopt the committee's recommendation of a one-month suspension. In light of respondent's prior disciplinary history, the board recommends that respondent be suspended from the practice of law for a period of four months.

The first charge against respondent concerned his representation of [C] in the appeal of his license

suspension. A hearing in this matter had been scheduled for January 14, 1987, of which both respondent and [C] had notice. Although the record is unclear as to whether [C] or respondent requested a postponement of the hearing, the hearing was not postponed and neither respondent nor [C] attended the hearing. Consequently, [C's] appeal was dismissed by court order dated January 14, 1987, and respondent made no attempt after the January 14 hearing date to determine the disposition of the case. Respondent offered no explanation as to why he subsequently took no further action to explain his absence to the court or to determine what had transpired at the hearing. After [C's] appeal was dismissed, he engaged new counsel. A subsequent motion for reconsideration, however, was denied by the court.

With respect to the second charge, respondent was retained by [E] to contest his aunt's will on the grounds of undue influence and incompetence.

Respondent testified that the entire $2,500 fee was to be paid up front as a condition to employment. However, [E] paid respondent only $250 of the fee up front. Further, [E] testified and respondent confirmed that at no time was a bill sent or a request made by respondent for further payment.

Although respondent asserts that he had no duty to represent [E] until full payment in advance of his fee, respondent apparently did attempt to file a notice of appeal on behalf of [E] with the register of wills before the expiration of the applicable statute of limitations. Respondent admitted that he was aware that an appeal had to be filed within one year of the probate of the will.

The register of wills, however, would not accept the appeal filed by respondent because it did not include [E's] notarized signature. Respondent testified that he sent the notice of appeal to [E], request-

ing his signature, but that the notice of appeal was never returned to him. Yet, [E] testified that he never received the notice of appeal or any other correspondence from respondent. Further, respondent failed to offer any evidence of such correspondence, and he admitted that he never attempted to contact [E] after not receiving the signed appeal. Rather, respondent indicated that he assumed that [E] no longer had any interest in the case.

Moreover, [E] sent respondent, allegedly upon respondent's request, a check for $1,000 which was made payable to [E] and which was sent to [E] by the executor of his aunt's estate. This amount represented the legacy due to [E] under the will. Respondent testified that he received this check but did nothing with it. Respondent also admitted that he never contacted the executor of the estate to inform him of [E's] claim.

In light of the foregoing, the disciplinary board concludes that respondent has violated D.R. 6-101(A)(3) in that he neglected certain legal matters entrusted to his care by these two clients. With respect to [C], respondent failed to seek a postponement on the license suspension hearing, to appear at the hearing, or to otherwise follow up in any way. With respect to [E], respondent failed to take any action to contest [E's] aunt's will, including the failure to timely file a notice of appeal with the register of wills on behalf of [E], or to even contact the executor of the estate regarding [E's] claim.

The record also demonstrates that respondent violated D.R. 7-101(A)(2), which deals with an intentional failure to carry out a contract of employment with a client for professional services. An attorney who "ignores a client's case" can be found in violation of both D.R. 6-101(A)(3) and D.R. 7-101(A)(2). *In re Anonymous No. 56 D.R. 77,* 13

D.&C. 3d 379 (1978). Because this rule involves the intentional failure by an attorney not to carry out an employment contract, it is necessary to establish a conscious decision not to act or a reckless indecision. With respect to the first charge, respondent made a conscious decision not to postpone the January 14, 1988 hearing and not to seek a continuance, two actions which not only were within his control but would be expected from respondent as the attorney of record in this case.

Respondent also made a conscious decision not to take necessary actions in his representation of [E]. Respondent presented no evidence to support his claim that notice had been sent. Further, respondent admitted that he made no effort to contact [E] when he didn't receive the notarized appeal. The board feels that respondent violated D.R. 7-101(A)(2) in both instances.

In determining the nature of discipline to be imposed, the board should consider whether any mitigating circumstances are present in his case. Respondent has testified that he was experiencing recurring angina and alcoholism during the period in which the charges occurred. Yet, respondent has denied that the alcoholism affected his representation of either client. Moreover, respondent failed to present any evidence concerning his medical problems. If respondent's problems were indeed serious enough to be considered as a mitigating factor, evidence such as hospital records or testimony of respondent's physician would have helped in evaluating these factors. Nevertheless, his failure to serve his clients' needs during these periods shows a lack of responsibility.

The board has also taken into consideration respondent's recent three-month suspension. Accord-

ingly, the board recommends a four-month suspension for respondent's violation of D.R. 6-101(A)(3) and D.R. 7-101 (A)(2).

## CONCLUSION OF LAW

The foregoing findings of fact warrant the conclusion that respondent has committed violations of the following disciplinary rules:

(1) D.R. 6-101(A)(3) — dealing with the neglect of a legal matter.

(2) D.R. 7-101(A)(2) — dealing with the intentional failure to carry out a contract of employment with a client for professional services.

## RECOMMENDATION

The disciplinary board of the Supreme Court of Pennsylvania recommends that respondent,[   ], be suspended from the practice of law for a four-month period. The board further recommends that, pursuant to rule 208(g), Pa.R.D.E., respondent be directed to pay the necessary expenses incurred in the investigation and processing of these proceedings.

## ORDER

And now, September 11, 1989, upon consideration of the report and recommendations of the disciplinary board dated May 10, 1989, it is hereby ordered that [respondent] be and he is suspended from the bar of this commonwealth for a period of four months, effective November 15, 1988, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.